UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

In re:  Linda M. Wheeler,

                Debtor.

Case No. 13-30759
Chapter 13

Christine Joan Henri, Stephanie L. Wheeler and
Nicholas C. Wheeler,

                Plaintiffs,

    v.

Linda M. Wheeler,

                Defendant.

Adv. Proc. No. 13-50017

Appearances:

Clifford C. Eisenhut, Esq., Attorney for Plaintiffs
Kalil & Eisenhut, LLC
1602 Sunset Avenue
Utica, New York  13502

David J. Gruenewald, Esq., Attorney for Defendant
P.O. Box 69
Manlius, New York  13104

Lynn Harper Wilson, Esq. Counsel to Chapter 13 Trustee
250 South Clinton Street, Suite 203
Syracuse, New York  13202



## **Memorandum-Decision and Order**

Christine Joan Henri and her two offspring with Gary Wheeler—Stephanie L. Wheeler and Nicholas C. Wheeler—("Plaintiffs") seek a determination that an $81,057.81 judgment debt be excepted from discharge under 11 U.S.C. §§ 523(a) (2), 523(a)(4), 523(a)(5) and 1328(a)(3).[1] Plaintiffs also seek to recover and have declared nondischargeable prepetition attorney fees of $14,062.50 incurred in originally pursuing the judgment and postpetition fees and costs of

---

[1] Unless otherwise noted, all sectional references are to Title 11 of the United States Code, §§ 101-1532 ("Code" or "Bankruptcy Code").

1

$9,292 incurred in this action.[2] Defendant Linda M. Wheeler ("Debtor" or "Defendant") filed an answer in general denial.

Plaintiffs have separately objected to confirmation of Debtor's amended chapter 13 plan under §§ 1325(a)(3) and (7) on the basis that Debtor did not file her petition nor propose her plan in good faith, and request dismissal of the case. Debtor's amended plan proposes payments of $170 for 60 months, resulting in an anticipated dividend of 10 percent on Plaintiffs' claim.

Because the evidentiary record to address both the issues raised as to nondischargeability and the objection to confirmation overlap, this court set a joint discovery schedule and joined both matters to be tried together. When prior to the close of discovery the Debtor failed to timely respond to Requests for Admission propounded by Plaintiffs, this court entered an order, after notice and a hearing, deeming the statements admitted pursuant to Fed. R. Civ. P. 36(a)(3). (Doc. 17). The parties filed a Joint Statement of Undisputed Facts prior to trial in accordance with the court's scheduling order. (Doc. 16).

The Debtor was scheduled as the only witness to testify at trial. However, she did not appear at the hearing and no other witnesses were called to testify. Plaintiffs' Exhibits A – J and L – NN were received in evidence, which include the Requests deemed admitted (Ex. NN). Defendant did not introduce any exhibits nor other evidence. The court took judicial notice of the Debtor's filings in the main case and reserved decision.

*Summary Conclusion*

Based upon the entire record, the court finds as follows:

- The $81,057.81 judgment debt is nondischargeable under Code §§ 523(a)(4), 523(a)(2)(A) and 1328(a)(2);

---

[2] While the prepetition fees are pled in the complaint, the recovery of postpetition fees is the subject of a separate motion noticed for hearing at the conclusion of the trial (Doc. 23). Debtor filed no opposition to this motion.

2

- Plaintiffs' claims under §§ 523(a)(5) and 1328(a)(3) are dismissed;

- Plaintiffs shall recover of Defendant prepetition attorney's fees of $14,062.50 and postpetition attorney's fees of $9,292; and

- Confirmation of Debtor's amended plan is denied and Debtor's case is dismissed with prejudice.

This memorandum-decision sets forth the court's findings of fact and conclusions of law in accordance with Fed. R. Bankr. P. 7052.

*Jurisdiction*

The court has jurisdiction of the matters framed for decision pursuant to 28 U.S.C. § 1334(b) and §§ 157(b)(1) and 157(b)(2)(I) and (L).

*Facts*

The operative facts are drawn from the exhibits in evidence, the proceedings to date in this case and the parties' Joint Stipulation of Facts ("Jt. Stip."). Defendant is the widow of Gary Wheeler. At the time of his death in October 2010, Mr. Wheeler held two life insurance policies with aggregate benefits totaling $233,432.73. (Jt. Stip., p. 1). Pursuant to an earlier judgment of divorce and a related stipulation of settlement between Mr. Wheeler and Plaintiff Christine Henri, Mr. Wheeler was to maintain his children–Plaintiffs Stephanie and Nicholas Wheeler–as beneficiaries on the policies indefinitely. (Jt. Stip., pp. 1–2). In derogation of his obligation, Mr. Wheeler changed the policy beneficiaries, removing his children and naming Defendant. (Jt. Stip., p. 2). As a result, the insurance proceeds were paid to Defendant upon the death of Gary Wheeler. (*Id.*).

Shortly after Mr. Wheeler's death, counsel for Plaintiffs sent a demand letter to Defendant's then counsel, Ann Manion, Esq., requesting turnover of the insurance proceeds.

3

(Ex. NN, Req. for Admiss. 13). Based upon her client's representation, Attorney Manion communicated to Attorney Eisenhut that the insurance proceeds would be held by Debtor in escrow pending resolution of the ownership dispute. (Ex. NN, Req. for Admiss. 15). At the time this representation was made, Debtor intended to take possession of the proceeds rather than place them in escrow, (Ex. NN, Req. for Admiss. 17), and to permanently deprive Plaintiffs of the proceeds. (Ex. NN, Req. for Admiss. 18). Debtor knew that her representation was false. (Ex. NN, Req. for Admiss. 19). Debtor intended that Plaintiffs rely on it, (Ex. NN, Req. for Admiss. 20), and to forbear from filing an application in court to require that the funds be placed in escrow. (Ex. NN, Req. for Admiss. 21). Between December 1, 2010 and February 29, 2012, Defendant took possession of the insurance proceeds of the two policies totaling $233,432.73. (Ex. NN, Req. for Admiss. 23).

On January 24, 2011, Plaintiffs commenced an action in New York State Supreme Court, Oneida County ("State Court"), to recover the proceeds of the two policies. (Jt. Stip., p. 2). In December 2011, the State Court granted Plaintiffs partial summary judgment on their entitlement to the proceeds of the smaller $50,000 policy and directed Defendant to immediately pay over that sum to the Plaintiffs, which the Debtor did. (Jt. Stip., p. 3). The State Court denied summary judgment as to the larger policy based upon an issue of fact raised by Defendant's assertion that this policy did not exist at the time of the divorce and was not governed by the terms of the stipulation of settlement. (*Id.*). On January 18, 2012, the State Court granted Plaintiffs' renewed motion for summary judgment and directed turnover of the larger policy's proceeds approximating $183,000 (Ex. KK – State Court Trial Transcript, p. 13). The State Court found that evidence submitted by Debtor—a letter purportedly from Mr. Wheeler's former employer to support her defense—had been "concocted" by the Debtor and that Debtor's sworn affidavit

presented to the State Court contained false representations. (*Id.* at p. 7). The State Court found that Debtor attempted to deceive the court and expressed outrage at what the court termed "one of the most blatant things that has ever come [before] me in my twelve years being a judge." (Ex. KK – State Court Trial Transcript at pp. 7–8).

Defendant then informed the State Court that she had only $102,376.12 of the insurance proceeds and had spent the balance of the funds. (*Id.* at p. 8). The State Court directed an accounting and enjoined the Debtor from further transfers. (Ex. EE – Order of State Court). When Debtor was asked if she understood the instruction, Debtor answered affirmatively. (Ex. KK – Transcript of Jan. 18, 2012 hearing, p. 22). In contempt of the court's injunction, Defendant, thereafter, invaded the insurance proceeds and (i) transferred $50,000 to her daughter (Jt. Stip., p. 6); (ii) used $7,700 to purchase a vehicle; (iii) paid another $7,989.05 on an existing car loan (Ex. NN, Reqs. for Admiss. 40 and 44) and (iv) paid other expenses. Debtor paid the $102,374.92 remaining proceeds to the Plaintiffs, bringing the total amount paid to $152,374.93. The unpaid balance was $81,057.81. (Jt. Stip., p. 6).

By written decision dated March 29, 2013, the State Court: (i) granted Plaintiffs judgment in the amount of $81,057.81 and (ii) found Defendant in civil contempt of its January 18, 2012 order due to her willful failure to remit all insurance proceeds to the Plaintiffs. (Ex. DD – Decision and Order at p. 17). The State Court also directed pursuant to section 753(A)(3) of New York's Judiciary Law that Defendant pay Plaintiffs' reasonable attorney's fees and costs directly related to her contemptuous conduct. (*Id.* at 14). The State Court directed Plaintiff's counsel to submit an affidavit as to attorney's fees and set a hearing date of May 29, 2013, should Defendant raise an objection. (*Id.* at 17).

Relative to the falsified proof submitted by the Defendant in opposition to Plaintiffs' motion for summary judgment, the State Court stated that "the evidence appears overwhelming that this letter was manufactured by Defendant Wheeler to delay or defeat the resolution of the summary judgment motion and also that she asserted false statements." (Ex. DD – Dec. and Order at p. 9). The State Court found that pursuant to 22 N.Y.C.R.R. § 130-1.1(c)(2)-(3) or its contempt powers under section 753(A)(3) of the Judiciary Law, it could *sua sponte* award Plaintiffs attorney's fees and costs based upon Defendant's wanton conduct in fabricating proof and making false statements. The court set a hearing for May 29, 2013, which was not held on account of the Debtor's bankruptcy filing on April 25, 2013, which stayed further State Court proceedings.

The Debtor's deceptive behavior continued throughout her bankruptcy case. Her chapter 7 voluntary petition failed to disclose a prior chapter 7 bankruptcy filing within the past eight years, which prompted the Office of the United States trustee to move for dismissal. The motion was settled by Debtor's conversion of her case to chapter 13. Debtor's sworn Statement of Financial Affairs failed to disclose her transfer of a 2003 Chevrolet Pickup Truck to an in-law, Lance Goodale, during the two year look-back period for § 548 fraudulent transfers.[3]

Debtor falsely testified under oath at her 341 meeting of creditors that she used a portion of the $50,000 which she had transferred to her daughter in February 2012 (i) to pay funeral expenses for her deceased husband and (ii) to repay a loan to a family member. (Jt. Stip., pp. 4–5). Debtor has since admitted that all of Mr. Wheeler's funeral services had previously been paid in full, contradicting her earlier testimony. (Ex. NN, Req. for Admiss. 93).

Debtor's schedules reveal that apart from the $81,057.81 judgment at issue in this case, Debtor has relatively modest debt. She lists: (i) two secured claims—$11,500 for a car loan and

---

[3] Evidence of this transfer is found in Exs. L and M, and Ex. NN- Reqs. for Admiss. 60 – 65.

$620 for real property taxes on real property owned by Gary Wheeler, her deceased husband,[4] (ii) an unsecured priority claim of $6,240 to the Internal Revenue Service; and (iii) general unsecured claims of $6,420. Debtor owns no real property and values her personal property assets at $12,020.

As previously noted, Debtor's amended chapter 13 plan[5] proposes payments of $170 for 60 months, representing a payout of 10% on unsecured claims that include Plaintiffs' claim. The plan also provides that the proceeds from the sale of Gary Wheeler's real property be paid into the plan within one year of confirmation.[6] The minimum amount to be paid into the plan is $10,200. Of the monies to be paid into the plan, $8,315 will go to pay priority claims—$2,075 to Defendant's counsel for attorney's fees and $6,240 to the Internal Revenue Service. Plaintiffs object to confirmation of the amended plan.

*Issues for Determination*

Debtor concedes that her obligation to Plaintiffs for the $81,057.81 judgment is nondischargeable pursuant to Code § 523(a)(4) due to defalcation. This was admitted by Debtor in a pleading filed with the court, (Doc. 21 at ¶5), and reiterated on the record at trial. Accordingly, the court shall consider (i) the remaining claims for nondischargeability of the debt; (ii) whether Plaintiffs are entitled to recover their prepetition and postpetition attorney's fees in the prosecution of this action under Rule 9011; (iii) whether the Debtor filed her petition and proposed her chapter 13 plan in good faith such that the plan is confirmable under § 1325(a)(3) and (5); and (iv) whether Debtor's case should be dismissed under § 1307(c).

---

[4] This tax obligation is arguably that of Mr. Wheeler's estate, and not owed by the Debtor.
[5] Case No. 13-30759, Doc. 55.
[6] The court observes that this timeframe is highly optimistic given that Mr. Wheeler died intestate and his estate has yet to be administered. Until such time as the real property is transferred to the Debtor, she will have no authority to sell it.

7

### *Discussion*

### *Nondischargeability Claims – Sections 523(a)(2), 523(a)(5) and 1328(a)(3)*

Plaintiffs bear the burden of establishing, by a preponderance of the evidence, the elements of an exception to discharge pursuant to section 523(a). *Grogan v. Garner*, 498 U.S. 279, 291 (1991). Each of the remaining bases for excepting the judgment debt from discharge are considered below.

### *Section 523(a)(2)(A) – False Representation*

Plaintiffs' claim under § 523(a)(2), although not denoted as such, is pled under subparagraph (2)(A). This subsection excepts from discharge any debt "for money . . . , to the extent obtained, by false pretenses, a false representation, or actual fraud." 11 U.S.C. § 523(a)(2)(A). "'To sustain a *prima facie* case under Section 523(a)(2)(A) of the Bankruptcy Code, a creditor must establish [that]: (1) the debtor made a false representation; (2) the debtor knew the representation was false at the time it was made; (3) the representation was made with intent to deceive the creditor; (4) the creditor justifiably relied on the representation; and (5) the creditor was injured by the representation and suffered damages as a result.'" *Eurocrafters, Ltd. v. Vicedomine*, No. 1:04-CV-855GLS, 2005 WL 1260390, at *4 (N.D.N.Y. May 18, 2005) (quoting *Charell v. Gonzalez (In re Gonzalez)*, 241 B.R. 67, 71-72 (Bankr. S.D.N.Y. 1999)), *aff'd*, 183 F. App'x 70 (2d Cir. 2006).

Plaintiffs have established each of the requisite elements to sustain a § 523(a)(2)(A) claim. Debtor falsely represented to the Plaintiffs through her counsel, Ann Manion, Esq., that she would hold the insurance proceeds in escrow pending resolution of the ownership dispute. (Ex. NN, Req. for Admiss. 15). Notwithstanding this representation, Debtor proceeded to convert $81,057.81 of the life insurance proceeds for her own use. (Ex. NN, Req. for Admiss.

8

27). At the time the representation was made, the Debtor knew it was false. (Ex. NN, Req. for Admiss. 17 and 19). The representation was made with the intent to deceive Plaintiffs to believe that the insurance proceeds would be preserved while the State Court determined entitlement thereto. (Ex. NN, Req. for Admiss. 21). The court finds that Plaintiffs justifiably relied upon Debtor's representation that she would hold the proceeds in escrow. There was no reason for Plaintiffs to suspect that Defendant, represented at the time by counsel, would not be truthful and forthright. The court finds it reasonable for Plaintiffs to believe that Defendant would wait to exercise dominion and control over the proceeds until such time as she definitively knew that it was her money to spend. Finally, Plaintiffs were injured by their reliance on Debtor's representation. Had Debtor been forthright about her intentions, Plaintiffs' counsel no doubt would have sought a court order that restrained the Debtor's use of those funds pending the outcome of litigation. As a result of Debtor's deceitful conduct, Plaintiffs suffered damages that include the $81,057.81 of missing proceeds, plus their attorney's fees and costs, incurred both in this action and the prior State Court litigation. The court finds that Plaintiffs have established their claim under § 523(a)(2)(A).

Defendant failed to come forward with any proof or explanation of her conduct to rebut the strong evidence presented by Plaintiffs. While Plaintiffs bear the ultimate burden of persuasion, "[o]nce a creditor establishes a *prima facie* case of fraud, the burden of coming forward with some proof or explanation of the alleged fraud shifts to the debtor." *Bethpage Fed. Credit Union v. Furio (In re Furio)*, 77 F.3d 622, 624 (2d Cir. 1996) (quoting *Carini v. Matera (In re Matera)*, 592 F.2d 378, 380–81 (7th Cir. 1979)). Plaintiffs have met their burden under § 523(a)(2)(A), and the court finds the $81,057.81 judgment nondischargeable under § 523(a)(2)(A). The attorney's fees component of damages is addressed below.

*Section 523(a)(5) – Domestic Support Obligation*

Section 523(a)(5) excepts from discharge a debt that is a domestic support obligation as that term is defined in § 101(14A). In order for this court to find that the debt constitutes a domestic support obligation, Plaintiffs must establish that the debt is: (i) owed to or recoverable by Plaintiffs in their respective capacities as a former spouse or child *of the debtor*; (ii) in the nature of alimony, maintenance or support; and (iii) established by the stipulation of settlement incorporated, but not merged with the Divorce Decree. *See* Code § 101(14A) (emphasis added); *Falk & Siemer, LLP v. Maddigan (In re Maddigan)*, 312 F.3d 589 (2d Cir. 2002).

Plaintiffs cannot establish that the insurance proceeds converted by the Debtor to her own use constitute a debt owed to or recoverable by "a former spouse or child" of the Debtor. Plaintiffs are the former spouse of the deceased, Mr. Wheeler, and his children, and are unrelated to the Debtor. Exceptions to discharge are to be strictly and literally construed against a creditor and liberally construed in favor of a debtor. *See Giarrusso Bldg. Supplies, Inc. v. Hogan (In re Hogan)*, 193 B.R. 130, 137–38 (Bankr. N.D.N.Y. 1995). Plaintiffs fail to state a claim for relief under § 523(a)(5).

*Section 1328(a)(3) – Criminal Restitution*

Certain debts "for restitution . . . included in a sentence on the debtor's conviction of a crime" are nondischargeable under Code § 1328(2)(3). There is no basis for this court to conclude that the debt owed by Defendant to Plaintiffs is in the nature of criminal restitution and therefore excepted from discharge under Code § 1328(a)(3). This section of the Code was amended in November 1990 to include the language: "for restitution included in a sentence on the debtor's conviction of a crime." Plaintiffs' judgment for the $81,057.81 and claim for attorney's fees of $14,062.50 arose out of a civil proceeding commenced in State Court. There is

no evidence before this court that the Defendant was subject to any criminal prosecution. Accordingly, Plaintiffs' claim under § 1328(a)(3) will be dismissed.

### *Confirmation of Plan – 11 U.S.C. §§ 1325(a)(3) and (7)*

Plaintiffs object to confirmation and assert that Debtor's petition was filed in bad faith. They point out that Debtor filed almost immediately after the State Court: (i) entered judgment in favor of Plaintiffs; (ii) held the Debtor in contempt of court; and (iii) had set a hearing on sanctions to be assessed against the Debtor. As viewed by the Plaintiffs, Debtor's filing was nothing more than a dilatory tactic to interrupt the final stage of the lengthy litigation—the assessment of attorney's fees as sanctions. To Plaintiffs, Debtor's filing was one more attempt to deprive them of the life insurance proceeds and hinder their efforts to collect their judgment.

In order to confirm a debtor's chapter 13 plan, the court must find that the plan meets each of the requirements enumerated in § 1325(a). Among these requirements are: (i) "the plan has been proposed in good faith and not by any means forbidden by law" and (ii) "the action of the debtor in filing the petition was in good faith." 11 U.S.C. §§ 1325(a)(3) and (7). The Debtor bears the ultimate burden of proof that she has satisfied the requirements for confirmation. And, "[a] Chapter 13 plan may be confirmed despite even the most egregious pre-filing conduct where other factors suggest that the plan nevertheless represents a good faith effort by the debtor to satisfy his creditors' claims." *Neufeld v. Freeman*, 794 F.2d 149, 153 (4th Cir. 1986). Notwithstanding the Debtor's burden of proof in establishing that her plan meets the requirements, Debtor chose not to be present or testify at trial, nor did she introduce any evidence to support a finding by this court that her petition was filed and her plan was proposed in good faith.

*Section 1325(a)(3) - Plan proposed in good faith*

Courts have identified various factors to be considered in determining whether a plan has been proposed in good faith. These factors—some more relevant than others depending on the specifics of a given case— include:

> (1) the amount of the proposed payments and the amount of the debtor's surplus; (2) the debtor's employment history, ability to earn, and likelihood of future increases in income; (3) the duration of the plan; (4) the accuracy of the plan's statement of the debts, expenses and percentage repayment of unsecured debt, and whether any inaccuracies are an attempt to mislead the court; (5) the extent of preferential treatment of creditors; (6) the extent to which secured claims are modified; (7) the type of debt sought to be discharged, and whether any such debt is potentially non-dischargeable in Chapter 7; (8) the existence of special circumstances such as inordinate medical expenses; (9) the frequency with which the debtor has sought relief under the Code; (10) the motivation and sincerity of the debtor in seeking Chapter 13 relief and; (11) the burden which the plan's administration would place upon the Chapter 13 trustee. *In re Makarchuk, supra,* 76 B.R. at 922–923 (citing *In re Estus,* 695 F.2d 311, 317 (8th Cir. 1982)); *see In re Sutliff, supra,* 79 B.R. at 154 (other factors include circumstances of incurring debt, the amount of attorney's fees, the debtor's degree of effort and percentage of debt repayment); *In re Tobiason,* 185 B.R. 59, 62 (Bankr. D. Neb. 1995).

*In re Corino,* 191 B.R. 283, 289 (Bankr. N.D.N.Y. 1995).

The Debtor, who has filed for bankruptcy protection in the past, is proposing a nominal payment plan extending over 60 months. By far, the most significant debt to be treated in the plan is Plaintiffs' claim, which would be nondischargeable in a chapter 7 proceeding. The timing and circumstances of Debtor's filing as well as the nature of Debtor's debt to Plaintiffs rightfully calls into question Debtor's sincerity and motivation in seeking chapter 13 relief. Debtor offered nothing to counteract the inference, which Plaintiffs would have the court draw, that Debtor has not proceeded in good faith. The fact that Debtor's obstructionist and contumacious behavior continued in proceedings before this court after she filed for bankruptcy is clear and convincing evidence of bad faith that infects her plan.

*Section 1325(a)(7)- Filing the petition in good faith*

A debtor acts in "good faith" when she demonstrates a "sound and proper motive for seeking the protection of [c]hapter 13." *In re Johnson*, 428 B.R. 22, 24 (Bankr. W.D.N.Y. 2010) (giving examples of the appropriate use of chapter 13 as a means to deal with "financial problems arising from calamity or caused by the debtor's own oversight or error"). Debtor's bankruptcy filing was precipitated by a ruling adverse to her in State Court that directed her to turn over insurance proceeds which she had wrongfully converted. Her further disrespect for the State Court resulted in a subsequent ruling that held the Debtor in contempt for failing to comply with the State Court's injunction. This situation is due not to a calamity or the Debtor's oversight or error, but rather resulted from a course of conduct intentionally undertaken by the Debtor through which she spent more than $80,000 that did not belong to her and then attempted to cover it up by her lies and dissembling. Bankruptcy was never intended to shield a debtor from the justifiable consequences of her own wrongful acts.

Based upon the background facts and circumstances of this case, the court concludes that the Debtor did not file the petition in good faith. This flaw is fatal not only to confirmation of the current plan but to any other plan that could be proposed.

Accordingly, confirmation is denied under §§ 1325(a)(3) and (7).

**Claims for Attorney's Fees**

*Request for Sanctions in the Form of State Court Attorney's Fees*

Plaintiffs ask that the $14,062.50 of attorney's fees that they incurred in connection with the State Court litigation be determined nondischargeable. The basis for this request is twofold. First, Plaintiffs allege that they are entitled to these fees because of the State Court's prior determination that it had the authority *sua sponte* to award Plaintiffs their attorney's fees and

costs under 22 N.Y.C.R.R. § 130-1.1(c)(2)-(3) due to Defendant's frivolous conduct in the State Court Action. (Ex. DD, p. 9). The frivolous conduct involved what the State Court called overwhelming evidence that the letter purporting to be from Mr. Wheeler's former employer had been manufactured by Defendant to delay or defeat Plaintiffs' motion for summary judgment and also included Defendant's assertion of false statements. This preliminary determination triggered Defendant's opportunity to be heard pursuant to 22 N.Y.C.R.R. § 130-1.1(c)(2)-(3), prompting the State Court to schedule a hearing. (*Id.* at p. 18).

The second basis for Plaintiffs' recovery of attorney's fees is the State Court's order holding the Defendant in contempt of its January 18, 2012 oral order, which was reduced to writing on February 6, 2012, for willfully failing to pay Plaintiffs all the proceeds of the life insurance policies. The State Court directed Defendant to pay Plaintiffs their reasonable attorney's fees and costs pursuant to N.Y. Judiciary Law § 773, which provides for an aggrieved party to recover attorney's fees and costs that are related to an offending party's contemptuous conduct. (Ex. DD, pp. 13–14). The State Court then directed Plaintiffs' counsel to submit an affidavit setting forth its fees and costs as a result of Defendant's contemptuous conduct and set the matter down for hearing.

The court agrees that absent the intervening bankruptcy case and imposition of the automatic stay, Plaintiffs' prepetition attorney's fees would have been liquidated and included in the judgment amount now before this court.

The issue of allowance and recovery of fees was raised anew before this court. Debtor has had ample opportunity to contest the reasonableness and amount of fees sought by Plaintiffs of $14,062.50 related to Debtor's frivolous and/or contemptuous conduct. Debtor has submitted no specific opposition to the amount or reasonableness of the fees. Given the extensive record of

14

proceedings occurring in State Court prior to the filing of this case, which has been presented and is part of the record of these proceedings, the court finds the requested fees of $14,062.50 to be reasonable and chargeable against the Debtor. Accordingly, Plaintiff may recover these fees from the Debtor which the court finds to be nondischargeable.

*Motion for Attorney's Fees pursuant to Fed. R. Bankr. P. 9011*

Plaintiffs have requested within the adversary proceeding—by separate motion pursuant to Fed. R. Bank. P. ("Rule") 9011—sanctions against the Defendant in the form of postpetition attorney's fees of $9,292. Plaintiffs argue that by filing her bankruptcy petition in bad faith the Debtor violated Rule 9011(b).[7] Violations of paragraph (b) are punishable by sanctions pursuant to paragraph (c).[8]

---

[7] Rule 9011 provides in part:

> (b) Representations to the Court. By presenting to the court (whether by signing, filing, submitting, or later advocating) a **petition**, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,—
> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law . . . .

Fed. R. Bankr. P. 9011(b)(1) and (2) (emphasis added).

[8]
> (c) Sanctions. If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation.
> (1) How Initiated.
> (A) By motion. A motion for sanctions under this rule shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate subdivision (b). It shall be served as provided in Rule 7004. The motion for sanctions may not be filed with or presented to the court unless, within 21 days after service of the motion (or such other period as the court may prescribe), the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected, **except that this limitation shall not apply if the conduct alleged is the filing of a petition in violation of subdivision (b).** If warranted, the court may award to the party prevailing on the motion the reasonable expenses and attorney's fees incurred in presenting or opposing the motion. . . . .

Fed. R. Bankr. P. 9011(c)(1)(A) (emphasis added).

The court finds that Plaintiffs' motion complies with the procedural requirements of Rule 9011(c). The motion was made separately from other motions and describes with specificity the conduct alleged to violate Rule 9011(b). The 21-day safe harbor provision does not apply to Plaintiffs' motion because the conduct alleged is the filing of the petition, which is specifically excepted under the Rule. Based upon this court's finding that the Debtor filed her petition in bad faith for the improper purpose of causing unnecessary delay and by so doing needlessly increased the costs of litigation for the Plaintiffs, the court grants Plaintiffs' motion under Rule 9011. Plaintiffs shall recover $9,292 from the Defendant for Plaintiffs' postpetition attorney's fees in addition to the previously allowed recovery of prepetition fees of $14,062.50.

*Dismissal of Case*

Plaintiffs seek dismissal of Debtor's case pursuant to § 1307(c), which all parties at the hearing agreed is ripe for determination if the court sustained Plaintiffs' objection to confirmation. In light of the fact that this court has found that the Debtor filed her petition in bad faith, this finding is fatal to confirmation of any subsequent plan that the Debtor could propose. The current proceeding has only served to unduly delay and frustrate the legitimate interests of Plaintiffs who are *bona fide* creditors of the Debtor. Accordingly, in addition to the separate judgment to be entered in this adversary proceeding, by separate order entered in the main case, this case shall be dismissed with prejudice, and the Debtor barred from filing a bankruptcy petition under any chapter of the Bankruptcy Code for a period of two years.

Dated: June 9, 2014
       Syracuse, New York

_____
Margaret Cangilos-Ruiz
United States Bankruptcy Judge